UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES GEORGE STAMOS,<br><br>    Petitioner,<br><br>    v.<br><br>WILLIAM MUNIZ,<br><br>    Respondent. | Case No. 1:15-cv-01838-DAD-MJS (HC)<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus under 28 U.S.C. § 2254. William Muniz, Warden of Pleasant Valley State Prison, is hereby substituted as the proper named respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. Respondent is represented by Maria Chan of the Office of the California Attorney General.

**I.    Procedural History**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a judgment of the Superior Court of California, County of Amador for vehicle theft. (See Pet. at 2, ECF No. 1.) He is serving a determinate seven year sentence. (Id.)

On February 22, 2013, an incident occurred between Petitioner and Officer Cermeno at the food port of Petitioner's cell at Salinas Valley State Prison. As a result, Petitioner was issued a CDCR 115 Rules Violation Report charging him with Battery on a Peace Officer with a Weapon. (Pet. at 6; Answer, Exh. 5, ECF No. 31-2.) On March 31, 2013, Petitioner appeared before the Senior Hearing Officer for a hearing on the disciplinary charge. (Answer, Exh. 5, ECF No. 31-2 at 31.) The Senior Hearing Officer found Petitioner guilty of the charge of battery on a peace officer with a weapon based on Cermeno's report and description of the event in the initial charge. (Id. at 33.) Petitioner was assessed a 360 days forfeiture of credits. (Id at 31.) The Chief Disciplinary Officer subsequently reduced the charge to battery on a peace officer and reduced the credit forfeiture to 120 days. (Id. at 30.) Petitioner alleges that the disciplinary hearing was conducted in violation of his due process rights because he was denied witnesses. (Pet. at 6.)

Petitioner filed a habeas petition in the Monterey County Superior Court, challenging the disciplinary violation on the ground that his due process rights were violated. (Answer, Ex. 1, ECF No. 31-1 at 2-7.) The petition was denied in a reasoned decision on February 11, 2015. (Answer, Ex. 2, ECF No. 31-1 at 9-10.)

On March 13, 2015, Petitioner filed a habeas petition in the California Court of Appeal for the Sixth District. The appellate court denied the petition in a summary decision on May 29, 2015. (Answer, Exs. 3-4, ECF No. 31-1 at 13-30.)

Petitioner filed a habeas petition to the California Supreme Court June 12, 2015. The petition was summarily denied on September 23, 2015. (Answer, Exs. 5 and 6, ECF No. 31-2.)

Petitioner filed the instant federal habeas petition on October 13, 2015. Respondent filed an answer to the petition on April 13, 2016. (Answer, ECF No. 31.) Petitioner filed a traverse on May 9, 2016. (ECF No. 36.)

## II. Factual Background

On February 22, 2013, an incident occurred between Petitioner and Officer Cermeno at the food port of Petitioner's cell at Salinas Valley State Prison. (Pet. at 6; Answer at 2, ECF No. 31.) According to Officer Cermeno, Petitioner pushed his food tray through the food port, striking Officer Cermeno and preventing him from securing the food port. (Answer, Ex. 5, ECF No. 31-2 at 30.) As a result, Cermeno utilized pepper spray against Petitioner. (Id. at 30.)

Petitioner was issued a CDCR 115 Rules Violation Report charging him with Battery on a Peace Officer with a Weapon. (Id. at 30.) Petitioner was given a copy of the CDCR 115. (Id.) On March 8, 2013, Officer Garcia was assigned as an investigative employee to assist Petitioner. (Id. at 37.) Garcia took Petitioner's statement, a statement from Officer Cermeno, and statements from three staff witnesses. (Id. at 37.) Officer Celaya gave Petitioner a copy of Garcia's report on March 27, 2013. (Id.) At that time, Petitioner handed Celaya additional questions/statements. (Id. at 38.) Celaya documented the questions and noted that he "had them reviewed by the [Senior Hearing Officer] who deemed them all irrelevant." (Id. at 38-39.) On March 29, 2013, Petitioner was given a copy of Celaya's report regarding Petitioner's questions. (Id.)

On March 31, 2013, Petitioner appeared before the Senior Hearing Officer for a hearing on the disciplinary charge. (Id. at 31.) Petitioner pled not guilty and made the following statement: "On 02/22/2013, I asked Officer to give me soap so that I can birdbath. Officer refused, and I became mad because I was disrespected. During trash and tray pick-up Officer came to my door. I handed him my tray then heard Officer say he's holding his food port hostage. I got sprayed." (Id. at 31.) The Senior Hearing Officer noted that Petitioner "did not request any witnesses for this hearing at the time he was issued a copy of the CDCR-115A." (Id. at 32.) He later noted that "No witnesses were requested or Granted by the SHO at the time of RVR hearing." (Id. at 33.)

The Senior Hearing Officer found Petitioner guilty of the charge of battery on a peace officer with a weapon based on Cermeno's report and description of the event in the initial charge. (Id. at 33.) Petitioner was assessed a 360 days forfeiture of credits. (Id at 31.) The Chief Disciplinary Officer subsequently reduced the charge to battery on a peace officer and reduced the credit forfeiture to 120 days. (Id. at 30.)

**III.    Discussion**

    **A.    Jurisdiction**

Relief by way of a writ of habeas corpus extends to a prisoner under a judgment of a state court if the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered a violation of his right to due process as guaranteed by the U.S. Constitution. The disciplinary proceeding occurred in and Petitioner remains housed in correctional facilities in the Eastern District of California. 28 U.S.C. § 2241(d); 2254(a). The Court concludes that it has jurisdiction over the action.

    **B.    Legal Standard of Review**

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of AEDPA; thus, it is governed by its provisions.

Under AEDPA, a petition for a writ of habeas corpus by a prisoner in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n.7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

4

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1. Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-06). "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted). The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009). For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).

A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76 (quoting Williams, 529 U.S. at 409-10); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stressed that "an unreasonable application of federal law is different from an incorrect application of federal law." 131 S. Ct. 770, 785 (2011) (citing Williams, 529 U.S. at 410) (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S. Ct. 1411, 1419 (2009) (quoting Richter, 131 S. Ct. at 786).

### 2. Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). This is referred to as the "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state court's reasoning." Richter, 131 S.Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded

jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. This is because "state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977)).

### 3. Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n.7 (2002); Musalin v. Lamarque, 555 F.3d 830, 834 (9th Cir. 2009).

7

## IV. Review of Petition

Petitioner contends that the CDCR 115 Rules Violation Report was fabricated and that he was denied witnesses at the disciplinary hearing in violation of his constitutional right to Due Process.

### A. State Court Decision

Petitioner presented his claims by way of petitions for writ of habeas corpus to the California Courts. Petitioner is not entitled to relief because the state court's legal and factual determinations in denying Petitioner's claims were not objectively unreasonable or contrary to Supreme Court law. The claim was denied in a reasoned decision by the Monterey County Superior Court and summarily denied in subsequent petitions by the California Court of Appeal and the California Supreme Court. (Answer, Exs. 2, 4, 6, ECF Nos. 31-1 and 31-2.)

Because the Supreme Court opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

The Superior Court described why Petitioner's due process rights were not denied in a reasoned decision, stating:

> When the sanction for serious misconduct is loss of conduct credits, an inmate is entitled to certain minimum due process rights. Wolff v. McDonnell (1974) 418 U.S. 539, 557.) Consequently, before a prisoner can be deprived of conduct credits, the state must provide: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call

8

witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action." Superintendent v. Hill (1985) 472 U.S. 445, 454, citing Wolff, supra, 418 U.S. at 563-567.)

While petitioner contends that SVSP violated his due process rights, the SHO states in the RVR that petitioner failed to request witnesses. The SHO further quotes petitioner's testimony at the hearing verbatim, indicating that he had the opportunity to present evidence. Additionally, SVSP appointed an investigative employee and petitioner had the opportunity to prepare questions for potential witnesses, although the SHO ultimately found petitioner's questions irrelevant. SVSP accorded petitioner the minimum due process required under the circumstances.

Further, as to any claim regarding the basis for the RVR, the "some evidence" standard of review applies. (See In re Powell (1988) 45 Cal.3d 894, 904; In re Johnson (2009) 176 Cal. App. 4th 290.) Under this deferential standard, the court need not examine the entire record, independently assess the credibility of witnesses, or weigh the evidence. (*Superintendent v. Hill* (1985) 472 U.S. 445, 455-56.) This burden is satisfied if there is "any evidence in the record that could support the conclusion reached by the disciplinary board." (Id. at 456.)

After reviewing the evidence, the court finds the SHO properly relied on the testimony of a reporting employee that petitioner intentionally struck him in the thigh with a food tray. Without reweighing the evidence, the court finds the RVR survives the lenient standard of review applicable here.

Based on the foregoing, the petition is DENIED.

(Answer, Exh. 2, ECF No. 31-1 at 9-10.)

### B. Procedural Due Process

The law concerning a prisoner's Fourteenth Amendment liberty interest in good conduct time is set forth in Wolff v. McDonnell, 418 U.S. 539 (1974). While the United States Constitution does not guarantee good conduct time, an inmate has a liberty interest in good conduct time when a state statute provides such a right and delineates that it is not to be taken away except for serious misconduct. Id. at 557. Inmates involved

9

in a disciplinary action are entitled to procedural protections under the Due Process Clause, but not to the full array of rights afforded to criminal defendants. Wolff, 418 U.S. at 556 (1974).Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing Superintendent, etc. v. Hill, 472 U.S. 445, 454-455 (1984)).

When a prison disciplinary proceeding may result in the loss of good conduct time, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567. In the facts and circumstances presented here, it appears that Petitioner received all the process that was due. Petitioner does not dispute that he received prior notice of the charges, the reasons for the charge, and an explanation of the decision.

Petitioner also was given the opportunity to call witnesses. According to the Senior Hearing Officer, he did not avail himself of this opportunity. Although Petitioner claims that he did, in fact, attempt to request witnesses, the Court cannot conclude that the Superior Court's reliance on the Senior Hearing Officer's statement was an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2).

Furthermore, even if Petitioner was erroneously denied witnesses, the denial was harmless. Brecht, 507 U.S. at 623. Petitioner presented Officer Celaya with a list of questions he wanted asked of Cermeno and other staff. These questions largely related to Cermeno's alleged refusal to provide Petitioner soap and the use of pepper spray against Petitioner following the incident with Cermeno. (ECF No. 31-2 at 38.) Petitioner additionally wished to ask whether Correctional Sergeant Machuca had seen Cermeno "do anything at Cell 117." The questions were denied as irrelevant. There is nothing

before the Court to suggest that the answers to these questions would have contradicted the evidence against Petitioner or affected the outcome of his disciplinary proceeding.

The state courts did not unreasonably apply Wolff in reviewing the procedural safeguards of the disciplinary proceedings and denying Petitioner's claim. 28 U.S.C. § 2254(d)(1).

### C. Substantive Due Process

Petitioner asserts that the CDCR 115 Rules Violation Report was fabricated. As discussed above, Federal habeas corpus relief is available only when the state court's decision results in a decision that "contrary to" federal law or was based on "an unreasonable determination of the facts." 28 U.S.C. § 2254(d); Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-06). The evidentiary standard for review of a state prison disciplinary decision's adherence to due process merely requires "some evidence from which the finding of the administrative tribunal could be deduced." Superintendent v. Hill, 472 U.S. 445 (1985).

A court must refrain from making its own assessment of the credibility of witnesses or second guessing the fact finding determinations and decisions of the disciplinary board. Id. at 455. Thus, the "some evidence" standard under Hill is "minimally stringent," and the courts may not "set aside decisions of prison administrators that have some basis in fact." Id. at 455-56. Further, the existing evidence need not "logically preclude" any conclusion other than the one reached by the hearing officer. Id. at 457.

An issue of fact is limited to "basic primary, or historical facts: facts in the sense of a recital of external events and credibility of their narrators." Thompson v. Keohane, 516 U.S. 99, 109-10 (1995) (interpreting 28 U.S.C. § 2254(d)). The state courts' adjudication of the petition did not turn on disputed factual findings; instead, the state court applied a federal standard of review to undisputed facts in the record. (Answer, Ex. 2 at 9-10; Hill,

11

472 U.S. at 455-456 (application of the some-evidence standard to a prison disciplinary decision does not involve re-weighing the evidence).)

Petitioner contends that the charge was fabricated, but does not present any argument that would have negated the evidence against presented at the hearing. Though the evidence was not overwhelming, Officer Cermeno's description of the incident constitutes "some evidence" to support the Senior Hearing Officer's finding of guilt.

An alternative account of the incident need not be accepted as true or accurate by the hearing officer, and does not undermine a finding that "some evidence" exists that the battery had occurred. The some evidence standard is a low threshold, and will be met even when evidence to the contrary is presented. As the evidence presented at the hearing and relied upon by the hearing officer constitutes some evidence that Petitioner committed battery, the disciplinary decision satisfies the some evidence standard. Accordingly, the state courts did not unreasonably apply Hill in reviewing the prison's disciplinary proceedings and denying Petitioner's claim. Moreover, in light of this Court's deferential review under AEDPA, the Court rejects the invitation to reweigh, reassess, and rebalance the evidence.

The state court decision properly applied clearly established Supreme Court law and the state court's factual determinations were not objectively unreasonable. Further, the disciplinary decision was found to be supported by some evidence. The Court finds no constitutional violation with regard to the finding of the disciplinary proceeding or the state court interpretation of such proceeding at issue in this case. The Court recommends that the petition for writ of habeas corpus be denied.

**V.    Conclusion and Recommendation**

Based on the foregoing, it is HEREBY RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These Findings and Recommendations are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, Petitioner may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: April 14, 2017 /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE